OTIS, Appellant, vs. WOOD and others, · Respondents.

*January 12—February 6, 1923.*

*Adverse possession: Establishment of boundaries: Evidence: Questions not litigated.*

1. In an action of ejectment to recover lands comprising part of the bed of a former mill pond, which developed into one for ascertaining the boundary line between plaintiff and the answering defendants, the line established by the court is not changed on appeal.

2. Where the court found the ownership of one of the lots to be in B., a defendant who had not answered, while plaintiff claimed the ownership to be in D., who also was in default, and the finding does not seem to be sustained by the evidence in the record, the judgment is corrected to avoid a cloud on the title of the true owner of the lot, the question of title not having been litigated.

APPEAL from a judgment of the circuit court for Langlade county: EDGAR V. WERNER, Circuit Judge. *Modified and affirmed.*

Action in ejectment. The complaint alleged plaintiff to be the owner in fee simple of certain described premises lying between Spring brook on the west and north, and Clermont street and block 12 of South Park addition to the city of Antigo; that the defendants unlawfully withheld possession; and asked judgment that plaintiff be put in possession and be awarded damages in the sum of $100.

The land in question comprised part of the bed of a mill pond which had been removed in 1892. Prior to that time, while the pond was in existence, South Park addition to the city of Antigo was platted and a .copy of a plat recorded in the office of the register of deeds. According to the recorded plat the western and northern boundaries of the addition were as follows:

"Where blocks 12, 14, 17, and 18 touch the mill pond they are bounded by the edge of the water when there is an eight and a half foot head on the dam at the foot of South Lincoln street."

South Park addition is platted into twelve lots, of which lots 1 to 7, inclusive, front on Clermont street, the eastern boundary of the subdivision, and lots 8 to 12 on Maple street, the southern boundary. The owner of lot 4 filed no answer, and the ownership of lots 5 to 12 is not alleged in the complaint.

The owners of lots 1, 2, and 3 made answer. They all pleaded the ten-year statute of limitations, and also alleged that neither plaintiff nor his predecessors in title had been seized of the land claimed within the last twenty years. At the trial counsel for the owners of lots 1 and 2 stated that they claimed only such land as was included in lines run between certain established stones and stakes, one of which was a stake at the northeast corner of lot 1, on Clermont street.

The recorded plat of South Park addition contained the following paragraph:

"The map is drawn to a scale of two hundred feet to the inch, and where the length of a line is not given it may be determined by reference to the scale."

Plaintiff introduced in evidence a copy of the recorded plat. (See p. 618.) On this plat the length of the lines between lots 1 and 2, 2 and 3, and 3 and 4, were not given. Witness for plaintiff testified that he had computed the length of these lines according to the scale and found them to be as follows: that between 1 and 2, 365 feet; between 2 and 3, 428 feet; between 3 and 4, 415 feet; and that the western boundary line of the addition could be found by drawing a line through these points.

Defendants introduced evidence tending to show that the recorded plat was not correctly drawn to scale; that between the line found by plaintiff as the bank of the old pond and the bed of the present creek there was land igher than that on the alleged location of the bank. It was undisputed that it would be impossible to locate the line on the basis of an eight and a half foot head of water

at the dam on account of inability to correctly locate the site of the old dam.

The trial court found, in substance, that the original plat of South Park addition was never recorded; that the copy

introduced in evidence by plaintiff was not drawn to scale and could not be used to ascertain the pond line; that the pond line could not be ascertained by computations on the

basis of an eight and a half foot head of water at the dam because the location of the dam could not be definitely determined; "that the surface of the land around what was formerly the mill pond indicates very plainly where the water stood when used as a mill pond;" that the west line of defendants' property should be found by continuing the line of Edison street south at the same angle at which it intersected Tenth avenue; that the northern and southern boundaries of defendants' lots, except lot 1, were as platted; that the northern boundary of lot 1 should be found as follows: commence at the point where the north line of lot 2 intersects the west boundary established by the court, thence run north on this line five feet, thence northeast in a straight line to the northeast corner of lot 1, the location of which was undisputed; that the land between Spring brook and the west boundary of defendants' land, as established by the court, belonged to plaintiff; and that plaintiff also owned the land between Spring brook and the north line of lot 1, as determined by the court.

The court found further that so much of the land in dispute as lay between the west boundary of defendants' land, as determined by the court, and the west boundary as contended for by plaintiff, had been held adversely by defendants and their predecessors for more than twenty years.

Judgment was entered accordingly. It was also adjudged that lot 4 was owned by Eleanor Beard, one of the defendants who had not answered.

The cause was submitted for the appellant on the brief of *Whiting & Dempsey* of Antigo, and for the respondents on that of *Hay & White* of Antigo.

JONES, J. Although the action was in ejectment it developed into one for ascertaining the boundary line between the lands of the plaintiff and the answering defendants.

It was conceded by all parties that these lines could not be determined or resurveyed from measurements with reference to an eight and a half foot head of water at the point where the old dam was located, because the location of the dam could not be definitely ascertained. The court found on sufficient evidence that the copy of the plat offered in evidence was not accurate as to scale and that the length of the lots in question from east to west was not marked on the plat. There were no monuments or stakes indicating the length of the lots. The plat does not accurately give the length or course of the west boundary line of lots 1, 2, and 3, nor the northerly line of lot 1. This situation made it difficult, if not impossible, to determine with mathematical certainty the boundary lines by the methods usually adopted in controversies of this kind.

The court found that the plaintiff had failed to establish his contention as to the west line of the land of defendants and the north line of lot 1, and that he was not entitled to all the land claimed by him. It was evidently the wish of all the parties that the boundary lines should be established, and the court had to resort to an investigation as to the physical facts, and the use of parol evidence. At the request of the parties the court inspected the premises and found as the proof showed that the surface of the land around the old mill pond indicated plainly where the water stood when the mill pond was used. The evidence showed that from Clermont street the land ran back nearly level to the west until it reached the edge of the former pond and then dropped off sharply from three to five feet.

The northeast corner of lot 1 is known and its location is not disputed, and the width of all the lots at Clermont street is not disputed. There was testimony that at the northwest corner of lot 1 there was a stone used as a marker, and that at the southwest corner of lot 2 there was an iron stake when the land was bought by *Henkey,* and a straight line between the stone and the stake was treated

as the west boundary line of lots 1 and 2. This line practically coincided with the east line of Edison street extended south.

There was a house on the *Henkey* lots and also on lot 3, fronting on Clermont street. These houses had been inhabited for many years, and there was a large amount of testimony to the effect that the level land on lots 1, 2, and 3 extending back from Clermont street to the edge of the high land had been occupied and used as their own by defendants and their predecessors in title for more than twenty years. We agree with the trial court that adverse possession of these three lots from Clermont street to the boundary line on the west as established by the court was clearly proven.

Considerable testimony was received on the question of adverse possession of the land west of the boundary line as established by the court, but this was too uncertain and conflicting to be a basis of establishing title. In fact, at the beginning of the trial defendants' counsel stated that they made no claim to the land in lots 1 and 2 to the north and west of the boundary lines which were later determined by the court.

The plaintiff bought the forty acres in which is included the land in dispute for a sum not exceeding $250 in 1912. The narrow strip of land between the lines as located by the court and the line as claimed by the plaintiff is quite insignificant in value.

The trial court had a much better opportunity than we have to ascertain the facts in controversy and we see no reason for modifying the finding of facts except in one particular. The court found and adjudged that Eleanor Beard and her grantees were the owners of lot 4. It is asserted by plaintiff's counsel that this is contrary to the fact and that in fact the land belongs to Martha Duescher. We do not find in the record before us that this finding was sustained by the evidence, and the question of title was not litigated

between those two defendants, as they made default. Since the judgment might create a cloud on the title of the real owner of this lot, we think it should be so corrected as to avoid such a result.

*By the Court.*—The judgment is affirmed as modified, with costs for respondents in this court, and the cause is remanded with directions to enter judgment in accordance with this opinion.